Van Norman **WHITE**

v.

**Bryan CLEMMONS, Sheriff, et al., East Baton Rouge Parish, Baton Rouge, Louisiana.**

**Misc. No. 681.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

May 4, 1965.

See, also, 235 F.Supp. 253.

Bert K. Robinson, Baton Rouge, La., appointed by the Court for relator, Van Norman White.

Ralph L. Roy, Asst. Dist. Atty., Baton Rouge, La., for respondent, Bryan Clemmons, Sheriff.

Teddy W. Airhart, Jr., Asst. Atty. Gen., of Louisiana, Baton Rouge, La., for respondent, H. L. Hanchey, Warden.

WEST, District Judge.

Petitioner, Van Norman White, is presently incarcerated in Louisiana State Penitentiary at Angola, Louisiana. He was tried by a jury on September 23 and 24, 1963, found guilty of simple burglary, and sentenced to serve seven years at the Louisiana State Penitentiary. During the trial, and at all times from arraignment to ultimate incarceration, petitioner was represented by extremely able counsel. An appeal from the conviction was taken and thirteen bills of exception were presented to the Louisiana State Supreme Court. Exhaustive briefs and arguments were presented to the Louisiana Supreme Court, covering all of the same matters now presented to this Court. After a thorough review by the State Supreme Court, a decision adverse to petitioner was rendered wherein it was determined that none of petitioner's state protected or federally protected rights have been violated in such a manner as to warrant a reversal of his conviction. His case is now before this Court on his application for the issuance of a writ of habeas corpus.

When his petition was filed here, this Court appointed counsel to represent him and granted a full evidentiary hearing. After considering the evidence adduced at this hearing, and after due consideration of the State Court record of his original trial, and the briefs and arguments of counsel, the Court concludes that petitioner's application for a writ of habeas corpus must be denied.

Several grounds have been urged by petitioner in support of his application. He contends that his constitutional rights have been violated in that (1) he was arrested without a warrant and without probable cause; (2) he was denied right to counsel; (3) he was denied preliminary hearing; (4) he was unlawfully detained for over five months between the time of his arrest and arraignment, during which time he made certain inculpatory statements which were used against him at his trial; (5) he was not advised of his constitutional rights; and (6) he

was the victim of an illegal search and seizure.

After enumerating these various contentions, petitioner's counsel then stated to the Court that petitioner actually relies primarily upon his unnecessarily long and illegal detention between the time of his arrest and the time of his arraignment as grounds for his present petition for habeas corpus.

The evidence in this case clearly establishes the following facts. Petitioner left Baton Rouge, Louisiana, on May 19, 1962, and went to Mobile, Alabama. On that same night a burglary was committed in Mobile, and petitioner was wanted by the Alabama authorities in connection therewith. Previously thereto, on or about June 6, 1961, Evans Electrical Supply Company in Baton Rouge, Louisiana, had been burglarized. The Baton Rouge authorities learned of the burglary committed in Mobile on May 19, 1962, and after dispatching a deputy sheriff to Mobile to investigate, and after finding that the modus operandi of the burglar in Mobile was exactly the same as that used by the one who burglarized Evans Electrical Supply Company, a search warrant was issued in Baton Rouge, Louisiana, on May 20, 1962, pursuant to which the premises occupied by petitioner's wife were searched. Sufficient evidence in the nature of electrical appliances was discovered there to prompt the Baton Rouge authorities to then issue a warrant for the arrest of petitioner, and to issue and circulate a "wanted bulletin." Petitioner testified that about two days after the Mobile burglary, he learned that there was a warrant out for his arrest and he went to Vicksburg, Mississippi, where he proceeded to live under the assumed name of Dan Donovan. He freely admitted at this hearing that he assumed this false name because he knew he was a fugitive from justice, and was being sought by police authorities. On December 20, 1962, he was arrested in Greenville, Mississippi, whereupon the Greenville authorities, aware of the "wanted bulletin" previously issued, notified the Baton Rouge authorities of the arrest.

Subsequently thereto, and pursuant to the warrant issued out of Baton Rouge in May, 1962, petitioner was turned over to the Baton Rouge authorities by the Greenville police on or about December 28, 1962.

At the time of his arrest in Greenville, petitioner and a Negro man by the name of Samuel Goodwin were seated together in a parked Ford station wagon at about 6:00 o'clock in the evening. As a police officer approached the car, the Negro man jumped into the back seat, apparently arising the suspicion of the officer. When the officer flashed a light in the car, he observed an assortment of tools described by petitioner as "carpenter tools," but of the kind usually described as "burglary tools." Petitioner and his Negro companion were then taken to police headquarters for questioning, and it was then that petitioner's true identity was discovered. He was then held for Baton Rouge authorities pursuant to the outstanding arrest warrant and "wanted bulletin." It was also determined that there were various other detainers outstanding against petitioner. Personnel of the Baton Rouge sheriff's office went to Greenville with the arrest warrant, and returned petitioner to Baton Rouge, Louisiana, where he was booked on a charge of simple burglary and theft. Almost immediately after his return to Baton Rouge, and quite spontaneously, after being informed that he was being held in connection with the burglary of Evans Electrical Supply Company, petitioner made a remark to the effect that he could probably be charged with possession of stolen goods, but not with burglary. He also stated that he was a sick man, was tired of running, needed some medical attention and dental work done, and that he wanted to go to the penitentiary to get it over with and to get the medical attention he said he needed. He also made a remark to the effect that he was an "old pro" and wanted to see the district attorney. For some unexplained reason, he was not arraigned until June 13, 1963, at which time an attorney was appointed by the Court to represent him

and he entered a plea of not guilty. From then on he was diligently represented by extremely competent counsel. On September 23 and 24, 1963, he was tried before a jury, found guilty as charged, and sentenced to serve seven years in Louisiana State Penitentiary. While petitioner complains of the long period of his confinement between the time of his arrest and the time of his arraignment, he steadfastly maintains that at no time did he admit his guilt or in any way confess to the charges lodged against him. And the record clearly bears this out. Furthermore, the remarks made by petitioner shortly after his arrest were not made as a result of any prolonged interrogation, nor were they made as a result of his long confinement. They were made almost immediately after his arrest, and they were made voluntarily and quite spontaneously. There is no evidence of any kind to even suggest any connection between the so-called inculpatory statements made by petitioner and the delay between his arrest and arraignment. There has been no showing whatsoever of any prejudice to the petitioner or of any advantage accruing to the State as a result of this delay in arraignment insofar as petitioner's trial and ultimate conviction are concerned. While there seems to be little or no valid excuse for such a delay between the time of petitioner's arrest and his arraignment, still, in the absence of some showing that prejudice resulted to petitioner therefrom, or that some advantage accrued to the State as a result thereof, the delay in itself does not constitute a violation of any federally protected right. Neither the charges lodged against the petitioner, nor the so-called inculpatory statements made by him were in any way connected with the delay complained of. As the record clearly reflects, all of the evidence ultimately used against petitioner at his trial was in the possession of the State prior to the commencement of the delay complained of. For all practical purposes, petitioner was not a subject for bail due to the many other detainers lodged against him. There is no showing whatsoever of any prejudice resulting from this delay.

As heretofore noted, there is no substance to petitioner's claim that illegally obtained statements were used against him during his trial. He gave no confession, and the statements which he made upon his arrest were voluntarily, knowingly, and spontaneously made. There is likewise no merit to petitioner's contention that he was arrested without a warrant and without probable cause, and that he was a victim of an illegal search and seizure. The arrest by the Louisiana authorities resulting in his present incarceration was made pursuant to a validly issued and outstanding warrant of arrest, and the search of the Baton Rouge premises was made pursuant to a validly issued search warrant. Even the arrest made on December 20, 1962, by the Mississippi police in Greenville, Mississippi, was not an unlawful arrest. The actions of petitioner and his Negro companion at that time justified an investigation by the police. During the investigation, the realization that petitioner was using a fictitious name, and was a fugitive from justice warranted their holding him for the Baton Rouge authorities pursuant to the outstanding arrest warrant and "wanted bulletin" issued some six months previously. And lastly, the Court finds no merit to petitioner's claim that he was denied his right to counsel. There is every reason to believe that petitioner intended to waive his right to counsel if he was successful in making some sort of deal with the district attorney. Failing in this, petitioner decided to plead not guilty, and prior to entering his plea, and prior to his arraignment, he was furnished with competent counsel with whose services he testifies he was entirely satisfied. He was thus diligently represented at every essential step in the proceedings against him. He, as an "old pro", was fully cognizant of his constitutional rights, and he was accorded those rights throughout the proceedings against him. Thus, after a full evidentiary hearing herein, and after carefully

reviewing the record of the proceedings had against petitioner in the State Courts, this Court now finds, as did the Supreme Court of Louisiana, that there is no merit to petitioner's contention that his constitutional rights have been violated, and hence, his application for the issuance of a writ of habeas corpus must be denied.